IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | |
|---|---|
| **JOHN F. RHODES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 5:04-0498 |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings and Plaintiff's Reply Brief.

The Plaintiff, John F. Rhodes (hereinafter referred to as "Claimant"), filed an application for SSI on February 9, 2001 (protective filing date), alleging disability as of April 10, 2001 (as amended), due to pinched nerve in the back of the skull, degenerative disc disease in the lower back, pinched nerve in the right leg, lung disease, and arthritis in all joints and in the neck. (Tr. at 131-35, 505, 62, 68.)  The claims were denied initially and upon reconsideration.  (Tr. at 62-64, 68-70.)  On September 4, 2001, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 71.)  The hearing was held on July 16, 2002, before the Honorable Thomas J. Mancuso.  (Tr. at 501-26.)  The ALJ issued a decision determining that Claimant was not entitled to benefits, but the

decision was remanded by the Appeals Council for further consideration of and clarification regarding the Claimant's mental impairment and its effect on his residual functional capacity ("RFC"). (Tr. at 95-97.) A second hearing was held on June 5, 2003. (Tr. at 527-71.) By decision dated July 23, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-35.) The ALJ's decision became the final decision of the Commissioner on April 22, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 9-12.) On May 20, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of back disorders, degenerative joint disease, chronic obstructive pulmonary disease ("COPD"), and an affective disorder. (Tr. at 19, 56.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant had a residual functional capacity to perform light work with additional limitations, including a sit/stand option, no exposure to unprotected heights or moving machinery; and several mental limitations, as detailed in the decision. (Tr. at 31.) At step four, the ALJ assumed, without making a finding, that Claimant could not return to his past relevant work. (Tr. at 31.) Nonetheless, the ALJ determined, on the basis of Vocational Expert testimony, that Claimant could perform jobs such as inspector (sedentary or light); assembler (sedentary); and

3

parking lot attendant (light), which exist in significant numbers in the national economy. (Tr. at 32.) On this basis, benefits were denied. (Tr. at 28-29.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on October 26, 1961, and was 41 years old at the time of the second administrative hearing. (Tr. at 132.) Claimant dropped out of school in the seventh grade. (Tr. at 158.) In the past, he worked as a security guard, a laborer, and a lumber stacker. (Tr. at 165, 562.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) improperly giving greater weight to the opinion of a non-examining psychologist over the opinions of the treating psychiatrist and the examining psychologist in determining his mental residual functional capacity; and (2) assessing Claimant's pain and credibility in accordance with the proper standards. Because the Court finds Claimant's first argument determinative of the outcome, it does not address the second argument. The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.

Assessment of Medical Source Opinions

Claimant first argues that in determining Claimant's mental residual functional capacity (RFC), the ALJ erred in giving greater weight to the opinion of the medical expert who testified at the administrative hearing than to the treating and examining mental health providers. Claimant asserts that the ALJ did not adequately explain his reasons for evaluating the evidence as such. The Commissioner asserts that this argument is without merit.

Analysis

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d) (2004). These factors include: (1) length of the treatment relationship and frequency of evaluation; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 416.927(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). The Regulations specifically provide that when ALJs consider opinions from medical experts, they will evaluate them using the rules set forth at 20 C.F.R. § 416.927(a) through (e), which includes the factors set forth above. 20 C.F.R. § 416.927(f)(2)(iii) (2004).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court, to

6

review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 416.927(d)(2)-(6), as set forth above. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

In the instant case, several mental health providers evaluated Claimant's mental impairments, including treating source Dr. Scharf at Seneca Mental Health; psychologists and consultative examiners Dale Rice and Kimberly Caudell; and Dr. Robert Muller, Ph.D., who was the medical expert present at the administrative hearing. On February 13, 2003, following the Appeals Council's remand of the first ALJ decision, Claimant was evaluated by psychologists Dale Rice and Kimberly Caudell. (Tr. at 394-404.) On a Medical Assessment of Ability to Do Work-Related Activities (Mental) form, the examiners concluded that Claimant had a "poor" ability (defined as seriously limited but not precluded) to relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; behave in an emotionally stable manner; and relate predictably in social situations. (Tr. at 400-01.) They opined that he had a "fair" ability (limited but satisfactory) to use judgment; function independently; maintain personal appearance; and demonstrate reliability. (Tr. at 400-01.) Claimant had a "good" ability (more than satisfactory) to follow work rules; maintain attention and concentration; and understand, remember, and carry out complex job instructions as

well as detailed but not complex job instructions, and simple job instructions. (Tr. at 400-01.) Ms. Caudell included the clinical/medical findings which supported her assessment. (Tr. at 400-01.) On another form, Ms. Caudell concluded that Claimant was moderately limited in his ability to interact appropriately with the public, co-workers, and supervisors. (Tr. at 404.)

On May 28, 2003, social worker Patricia Gore completed a Medical Assessment form regarding Claimant's ability to do work-related mental activities. (Tr. at 440-43.) This form is also signed by Dr. Scharf, Claimant's treating psychiatrist. (Tr. at 443.) Using the same definitions of "good," "poor," and "fair," the two concluded that Claimant had a "poor" ability to relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stresses; understand, remember, and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; and relate predictably in social situations. (Tr. at 440-42.) Claimant had a "fair" ability to follow work rules; function independently; maintain attention/concentration; understand, remember, and carry out detailed but not complex job instructions; and demonstrate reliability. (Tr. at 440-42.) Claimant had a "good" ability only to understand, remember, and carry out simple job instructions. (Tr. at 441.) Ms. Gore/Dr. Scharf concluded that Claimant had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and experienced one or two episodes of decompensation of extended duration. (Tr. at 443.)

At the second administrative hearing before the ALJ, Robert Muller, Ph.D., licensed clinical psychologist, testified regarding Claimant's impairments and abilities. Dr. Muller reviewed the evidence of record and reviewed the assessments of Dr. Scharf/Ms. Gore and Ms. Caudell/Mr. Rice.

(Tr. at 550-58.) When asked with which assessment he agreed, Dr. Muller indicated that he would agree and disagree with parts of both assessments. (Tr. at 558.) Dr. Muller then provided to the ALJ his assessment of Claimant's abilities to do mental work-related activities. (Tr. at 559-60.) Dr. Muller opined that Claimant would have a "poor"[1] ability to relate to co-workers; deal with the public; and understand, remember, and carry out complex, as well as detailed but not complex, job instructions. (Tr. at 559-60.) He opined that Claimant had a "fair" ability to follow work rules; use judgment; interact with supervisors; function independently; maintain attention/concentration; maintain personal appearance; relate predictably in social situations; and demonstrate reliability. (Tr. at 559-60.) He opined that Claimant had a "fair" to "poor" ability to deal with work stresses and behave in an emotionally stable manner. (Tr. at 559-60.) Dr. Muller testified that Claimant was "clearly depressed" and had a severe impairment. (Tr. at 557.) He noted, however, that "[m]y sense is that he stays moderately depressed and then if there are triggers in his life that he will have more severe depressive episodes, more episodic." (Tr. at 558.) He opined that Claimant's conditions would not meet any listed impairment. (Tr. at 558.)

       The ALJ asked the Vocational Expert (VE) at the administrative hearing to consider a person of Claimant's age, education, and work experience, who is capable of performing light work with a sit/stand option and would need to avoid heights and moving machinery. (Tr. at 563.) He also added the limitations due to depression given by Dr. Muller (as set forth above) and asked whether such a person could perform any jobs which existed in significant numbers in the economy. (Tr. at 563-64.) The VE noted that it was difficult to come up with a clear, concise answer but concluded

---

[1] The definitions of these terms were the same as those used by the other examiners. (Tr. at 558-59.)

that such a person could perform sedentary or light inspector positions, sedentary assembly-type positions, and the job of parking lot attendant. (Tr. at 565-66.) In response to questioning from counsel, the VE stated that the thing that caused him to pause in answering was "the number of problems that this individual has", meaning the "psychological factors, the loss of concentration, the episodic tendencies, the stress factors, these kinds of things, which are very difficult to measure and certainly a matter of degree." (Tr. at 568.) When counsel asked the VE to consider the mental RFC of Dr. Scharf/Ms. Gore, the VE opined that "I think this individual would have a great deal of difficulty working if you go to that level." (Tr. at 570.) He agreed that there were enough "poor" ratings in that assessment to preclude work activity. (Tr. at 570.)

In his decision, the ALJ summarized the evidence of record, including the testimony of Dr. Muller. The ALJ also summarized Dr. Muller's assessment of Claimant's mental work-related capacities. (Tr. at 28.) The ALJ noted that "there is one salient assessment of the claimant's specific mental functional capacities and limitations by a treating medical source that must be weighed in light of the subjective and objective evidence of record and the opinion of the independent testifying clinical psychologist based on that evidence." (Tr. at 28.) He further stated that "the significant treating medical source opinion to be considered in this case is that of Dr. Scharf." (Tr. at 29.) Although the ALJ went on to assess Dr. Scharf's opinion and his assessment of Claimant's mental limitations in light of the pertinent factors, he did not do so with regard to the report and limitations expressed by psychologists Rice and Caudell. (Tr. at 29-31.)

The ALJ stated that Dr. Muller reviewed the entire record, which included materials not available to Dr. Scharf at the time of his May 28, 2003, assessment. (Tr. at 30.) He noted that Dr. Muller rated Claimant as having a "fair to poor" ability to deal with work stresses and behave in an

10

emotionally stable manner, as opposed to Dr. Scharf's ratings of "poor" in these areas. (Tr. at 30.) The ALJ further stated that Dr. Muller's assessment was "a bit more precise in this case, because it takes into account the judgment of the psychologists who examined the claimant on February 13, 2003, that the claimant's social functioning was moderately impaired *depending upon the work-related decisions involved.*"[2] (Tr. at 30.) (emphasis in original). The ALJ concluded that if Claimant was limited to simple and repetitive type work tasks, his capacities for dealing with work stresses and for behaving in an emotionally stable manner would be "fair" rather than "poor." (Tr. at 30.) He stated that this conclusion "is based upon Dr. Muller's testimony as a whole and the evidence that supports that testimony very well." (Tr. at 30.) The ALJ does not explain to what evidence he refers.

The ALJ stated that he "gives much weight to the opinions of the treating and examining medical sources whose opinions are recounted above, but not controlling weight." (Tr. at 31.) He found that the "more specific statements by the independent experts who testified at the hearing based upon a review of the entire medical record in this matter are based largely upon the opinions of the treating sources, although refined somewhat in light of the record as a whole; thus, those assessments of the claimant's specific work-related capacities are most persuasive." (Tr. at 31.) Notably, this case concerns physical medical evidence as well as mental, and there was another

---

[2] Claimant points out that this observation may have been erroneous and based on an inaccurate reading of the statement. As Claimant notes, the entire statement, written by Kimberly Caudell, is as follows: "His judgment was within normal limits based on his response to the letter question, however due to mood and affect there may be a mild limitation in this area as social functioning was moderately impaired, depending on the work-related decision involved." (Tr. at 403.) As Claimant points out, the examiner was discussing judgment and the last few key words may have been intended to modify the statement there may be mild limitation in judgment. At no other place in the assessment did the examiners state that social functioning was moderately impaired *depending on the work-related decision involved.* (Tr. at 400-04.)

11

medical expert present at the administrative hearing who testified regarding Claimant's physical conditions. Thus, it is difficult to discern from the ALJ's statement the weight afforded the different physical and mental medical source opinions.

Claimant spends much time arguing that the ALJ improperly evaluated the assessment of Dr. Scharf/Ms. Gore. The ALJ did spend a portion of the decision, however, explaining the reasons for not giving controlling weight to this assessment. (Tr. at 29-30.) He also considered the pertinent factors set forth in the Regulations. (Tr. at 29-30.) The ALJ did not, however, evaluate the opinion and assessment of Mr. Rice and Ms. Caudell in accordance with the appropriate factors, as is required by the Regulations. The ALJ briefly mentions this assessment and notes that these examiners found that Claimant's "social functioning was moderately impaired *depending upon the work-related decisions involved.*" (Tr. at 30.) (emphasis in original.)

The ALJ does not mention the fact that these examiners nevertheless rated Claimant as having a "poor" ability in several areas, including the ability to relate to co-workers; deal with the public; interact with supervisors; and deal with work stresses. (Tr. at 400-02.) These ratings are consistent with those given by Dr. Scharf/Ms. Gore, and the ALJ failed to discuss the consistency among these two opinions from treating and examining providers. (Tr. at 441-43.) Notably, the assessments of Dr. Scharf/Ms. Gore and Mr. Rice/Ms. Caudell are quite similar. More importantly for purposes of this decision, both of these assessments rate the exact same areas as "poor" with the exception of the area "use judgment." (Tr. at 400-02, 441-43.) Dr. Scharf/Ms. Gore rated "use judgment" as "poor" while Ms. Caudell rated this as "fair." (Tr. at 400-02, 441-43.) The consistency of these "poor" ratings in the two assessments becomes extremely important in light of the VE's testimony that with the limitations expressed by Dr. Scharf, particularly the "poor" ratings, there is

no work that Claimant could perform. (Tr. at 570.) Additionally, the major differences between Dr. Muller's assessment and Dr. Scharf's assessment are the "poor" ratings. The following table compares the three assessments:

| Type of Mental Work-Related Activity | Dr. Scharf/ Ms. Gore Rating | Ms. Caudell Rating | Dr. Muller Rating |
|---|---|---|---|
| Follow Work Rules | Fair | Good | Fair |
| Relate to Co-Workers | Poor | Poor | Poor |
| Deal With the Public | Poor | Poor | Poor |
| Use Judgment | Poor | Fair | Fair |
| **Interact with Supervisors** | **Poor** | **Poor** | **Fair** |
| **Deal with Work Stresses** | **Poor** | **Poor** | **Fair to Poor** |
| Function Independently | Fair | Fair | Fair |
| Maintain Attention/ Concentration | Fair | Good | Fair |
| Understand, remember, carry out complex job instructions | Poor | Good | Poor |
| Understand, remember, carry out detailed but not complex job instructions | Fair | Good | Poor |
| Understand, remember, carry out simple job instructions | Good | Good | Good |

| | | | |
|---|---|---|---|
| Maintain Personal Appearance | Poor | Fair | Fair |
| **Behave in an Emotionally Stable Manner** | **Poor** | **Poor** | **Fair to Poor** |
| **Relate Predictably in Social Situations** | **Poor** | **Poor** | **Fair** |
| Demonstrate Reliability | Fair | Fair | Fair |

Several areas that Dr. Muller rated as "fair" are the areas that both of the other providers rated "poor," as shown in bold print in the above table. The ALJ explained that the limitation to simple, repetitive type work would make Claimant's ability to deal with work stresses and behave in an emotionally stable manner "fair" rather than "poor." (Tr. at 30.) The ALJ failed to address Dr. Muller's rating of "fair" with regard to "interacting with supervisors," despite the fact that the other two assessments rate this area as "poor." (Tr. at 400-01, 440-42, 559-60.) Dr. Muller found that Claimant had a "poor" ability to relate to co-workers and deal with the public, but a "fair" ability to interact with supervisors. (Tr. at 559-60.) Notably, the ability to respond appropriately to supervision, co-workers, and usual work situations are mental activities generally required by competitive, remunerative, unskilled work. See Social Security Ruling (SSR) 96-9p. In light of the VE's testimony, it becomes critical for the ALJ to therefore carefully explain the weight given to all relevant evidence and the reasons for choosing non-examiner Dr. Muller's assessment over those of treating and examining providers. To rely upon the testimony of a non-examining physician, the ALJ must sufficiently show the consistency between Dr. Muller's assessment and testimony and the remainder of the record, rather than just stating that his testimony is well supported by the record. See Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984).

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

Based upon the foregoing, the undersigned finds that the instant case should be remanded for further consideration and explanation of the reasons for discounting the assessment of examining psychologist Ms. Caudell and the reasons for adopting non-examiner Dr. Muller's assessment despite the consistency between the other two assessments completed by treating and examining mental health providers. On remand, the Commissioner should note the other evidence of record supporting Dr. Muller's assessment.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **REVERSE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and

72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 1, 2005.

R. Clarke VanDervort
United States Magistrate Judge